# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| **v.** | ) | **ID No. 1707014544** |
| | ) | **Cr. A. Nos. 17-08-0024, etc.** |
| **GIGERE F. JACKSON,** | ) | |
| **Defendant.** | ) | |

Submitted: January 18, 2022
Decided: April 11, 2022

## <u>ORDER DENYING POSTCONVICTION RELIEF</u><br><u>AND GRANTING COUNSEL'S MOTION TO WITHDRAW</u>

Upon consideration of Defendant Gigere F. Jackson's Motion for Postconviction Relief (D.I. 48), the State's response thereto (D.I. 70), his postconviction counsel's Motion to Withdraw (D.I. 63), the affidavits of both trial and appellate counsel (D.I. 68, 69), Mr. Jackson's response to postconviction counsel's Motion to Withdraw (D.I. 66), and the record in this case, it appears to the Court that:

## I. FACTUAL AND PROCEDURAL BACKGROUND

(1) In early July 2017, members of the Wilmington Police Department's Drug, Organized Crime, and Vice Division (WPD) were contacted by two separate confidential informants. They both relayed that crack cocaine was being sold from a residence located at 434 S. Van Buren Street in the City of Wilmington.

The informants identified the dealer as "G" and described him as a tall, black male with short hair and glasses.[1] The informants independently described the same manner and location in the home where drug sales occurred, along with the cell phone number used by "G" to facilitate these transactions.[2]

(2) Upon learning this information, WPD detectives arranged for one of the confidential informants to attempt a controlled purchase of the drugs from "G" at the Van Buren Street address.[3] The confidential informant made two controlled buys of an off white rock-like substance, that was subsequently field-tested and identified as cocaine.[4] At separate times during the investigation, detectives showed the two informants a photograph of Mr. Jackson. They both positively identified him as "G"—the man selling crack cocaine from the Van Buren Street address.[5]

(3) A few weeks after the controlled purchases, WPD detectives were again approached by one of the confidential informants. The informant relayed that Mr. Jackson possessed a silver handgun and kept it at the Van Buren Street address.[6]

---

[1] Appendix to PCR Counsel's Mem. in Supp. of Mot. to Withdraw ("PCR App.") at A92, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. July 30, 2021) (D.I. 64).

[2] *Id.*

[3] *Id.* at A93.

[4] *Id.*

[5] *Id.*

[6] *Id.* at A94.

Relying on all this, WPD detectives obtained a warrant to search for drugs at the 434 South Vanburen Street residence.[7]

(4) During the execution of the search warrant, Mr. Jackson was detained and properly Mirandized. Once in custody, he remained silent other than to respond to police officers' questions with "you told me to wait for my lawyer."[8] The detaining officers told Mr. Jackson that he was the subject of an active investigation and he should say something "if there was anything illegal in the house" because his wife, minor child, and mother-in-law were still inside.[9] Mr. Jackson subsequently admitted ownership of firearms and led detectives to their location in a cooler.[10] It appears he made no other statements or suggestions while in custody.[11]

(5) No drugs were found during that lawful search. But police did find and seize a holster, some mail addressed to Mr. Jackson at 434 S. Van Buren Street, and two loaded handguns found in a cooler.[12]

(6) Police obtained and executed a second search warrant to collect a DNA

---

[7]  *Jackson v. State*, 2019 WL 5067096, at *1 (Del. Oct. 8, 2019).

[8]  PCR App. at A14.

[9]  *Id.* at A14, A16-A17.

[10]  *Id.* at A14-A15.

[11]  *Id.* at A17.

[12]  *Id.*

sample from Mr. Jackson.[13] A comparison of his DNA and a DNA sample obtained from one of the handguns found in the cooler indicated a "very high probability that the DNA on the gun" was Mr. Jackson's.[14]

(7) Mr. Jackson was represented at his preliminary hearing by Ralph D. Wilkinson, IV, Esquire, who then represented him through his trial and sentencing proceedings.[15] At the preliminary hearing Mr. Wilkinson began to explore whether the searching/arresting officers violated Mr. Jackson's post-*Miranda* right to remain silent and whether that might support suppression of the firearms discovered.[16] Mr. Jackson was bound over to this Court for trial.[17]

(8) Shortly thereafter, a grand jury indicted Mr. Jackson on two counts of Possession or Control of a Firearm by a Person Prohibited ("PFBPP") and two counts of Possession or Control of Ammunition by a Person Prohibited.[18]

---

[13] *Jackson*, 2019 WL 5067096, at *1.

[14] *Id.*

[15] Tr. of Prelim. Hr'g, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. July 31, 2017) (D.I. 54); PCR App. at A10-A22.

[16] *See generally* Tr. of Prelim. Hr'g.

[17] PCR App. at A22.

[18] Indictment, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Sept. 18, 2017) (D.I. 2).

(9) Mr. Wilkinson did file a motion seeking exclusion of Mr. Jackson's post-arrest statements and conduct leading detectives to the firearms in the cooler because their discovery occurred after Mr. Jackson had invoked his right to remain silent.[19] By trial though, it appears any suppression application of that evidence was mooted by the State's agreement not to introduce it.[20]

(10) The State extended a plea offer to one count of PFBPP with a recommendation that Mr. Jackson serve the minimum 15-year term required with application of his habitual criminal offender status.[21] Mr. Jackson rejected the State's plea offer.[22] And thereafter, he waived his right to a jury trial.[23]

(11) Following a two-day bench trial, Mr. Jackson was convicted of two counts of Possession of a Firearm by a Person Prohibited ("PFBPP") and two counts of Possession of Ammunition by a Person Prohibited ("PABPP").[24]

---

[19] PCR App. at A34-A37, A42.

[20] Trial Counsel Aff., *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Nov. 4, 2021) (D.I. 68).

[21] *Id.* at A28.

[22] Case Review Tr., *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Jan. 16, 2018) (D.I. 58); PCR App. at A43-A48.

[23] PCR App. at A125-A126.

[24] Verdict Sheet, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Aug. 8, 2018) (D.I. 19).

(12) Mr. Jackson was sentenced to serve: (a) ten years at Level V for one PFBPP count (IN17-08-0024); and (b) ten years at Level V followed by six months of supervised probation for the second PFBPP count (IN17-08-0025) at Level III.[25] The Court suspended the sentence on the PABPP charges. Mr. Jackson's cumulative 20-year period of unsuspended imprisonment is comprised wholly of minimum terms of incarceration that must be imposed and cannot be suspended.[26] Mr. Jackson's two terms of unsuspended incarceration were ordered to be served consecutively.[27]

(13) Mr. Jackson docketed a direct appeal from his convictions and sentence.[28] While his appeal was pending, he timely filed a *pro se* motion under Superior Court Criminal Rule 35(b) requesting a reduction of the Level V term of

---

[25] Modified Sentencing Order, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Feb. 18, 2019) (D.I. 30) (issued with no substantive changes after the Court vacated its original sentencing order so Mr. Jackson could docket a timely direct appeal).

[26] DEL. CODE ANN. tit. 11, § 1448(e)(1)(c) (2017) ("Notwithstanding any provision of this section or Code to the contrary, any person who is a prohibited person as described in this section and who knowingly possesses . . . or controls a firearm . . . while so prohibited shall receive a minimum sentence of [t]en years at Level V, if the person has been convicted on 2 or more separate occasions of any violent felony.").

[27] Mr. Jackson's terms of incarceration for the two the PFBBPP counts—because he was previously convicted of at least one Title 11 violent felony—could not be ordered to be served concurrently either with each other or with any other sentence of confinement imposed. *Id.* at § 3901(d).

[28] *See* Notice of Appeal, *Gigere F. Jackson v. State of Delaware*, No. 73, 2019 (Del. filed Feb. 20, 2019).

his sentence.[29] The Court stayed and deferred decision on Mr. Jackson's Rule 35(b) motion while his appeal was pending.[30] In October 2019, the Supreme Court affirmed Mr. Jackson's convictions and sentence.[31] Mr. Jackson's pending Rule 35(b) motion was thereafter denied by this Court.[32]

## II. MR. JACKSON'S MOTION FOR POSTCONVICTION RELIEF

(14) Mr. Jackson then timely filed, *pro se*, the present Motion for Postconviction Relief[33] enumerating sixteen counts of ineffective assistance of counsel—all concerning Mr. Wilkinson and his trial management.[34] Specifically, Mr. Jackson alleges Mr. Wilkinson was ineffective as:

    i.    he refused to permit Mr. Jackson to testify and "tell his story";

    ii.    he failed to cross-examine the State's witnesses and chose not to call any of Mr. Jackson's witnesses who would testify they did not see Mr. Jackson with a gun in the residence;

---

[29] Def.'s Mot. for Reduction of Sentence, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Mar. 6, 2019) (D.I. 34).

[30] *See* Order, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Mar. 11, 2019) (D.I. 35) (staying Jackson's Rule 35(b) motion during pendency of appeal); Super. Ct. Crim. R. 35(b) ("The court may decide the motion or defer decision while an appeal is pending.").

[31] *Jackson*, 2019 WL 5067096.

[32] Order Den. Def.'s Mot. for Reduction of Sentence, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. May 5, 2020) (D.I. 47).

[33] Def.'s Mot. for Postconviction Relief ("Def.'s PCR Mot."), *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. July 27, 2020) (D.I. 48).

[34] Def.'s Memo. in Supp. of Mot. for Postconviction Relief ("Def.'s PCR Memo."), *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. July 27, 2020) (D.I. 49).

iii. he failed to get a suppression hearing based on an agreement with the State that Mr. Jackson's custodial statements wouldn't be elicited at trial;

iv. he failed to obtain suppression the firearms based on a purported *Miranda* violation;

v. he failed to question the police officer whether either of the guns fit into the holster collected from the home search;

vi. he failed to elicit any testimony about the lack of drug evidence admitted at trial;

vii. he failed to challenge the credibility of the confidential informants based on the lack of drugs found in the home;

viii. he failed to question whether the police had surveillance video;

ix. he failed to subpoena the confidential informants to testify;

x. he failed to cross-examine the person who accused Mr. Jackson of having a gun in the home;

xi. he failed to argue the police were "just fishing" in obtaining their search warrant;

xii. he failed to dispute the validity or credibility of the warrant based on the fact that the police and K-9 units were in the home for hours and never found any drugs;

xiii. he failed to question why the police didn't find what they "knew" was in the residence;

xiv. trial counsel failed to question whether the police personally observed the informants conduct the controlled drug transactions;

xv. he failed to challenge the reliability of the DNA comparison analysis; and

xvi. he failed to address whether the police should have obtained a second warrant to seize the guns.[35]

(15) In addition to his Rule 61 motion, Mr. Jackson filed a Motion for Appointment of Counsel.[36] In accord with this Court's Criminal Rule 61(e)(1), the Court granted that motion and appointed Edward F. Eaton, Esquire, to represent Mr. Jackson in his quest for postconviction relief.[37]

(16) Mr. Eaton has now, pursuant to Rule 61(e)(7), filed a Motion to Withdraw as Counsel.[38] Mr. Eaton declares that, after careful review of the entire record in Mr. Jackson's case, Mr. Jackson's claims are so lacking in merit that he cannot ethically advocate for them, nor is he aware of any other substantial grounds for relief.[39]

(17) Mr. Wilkinson has submitted an affidavit responding to Mr. Jackson's postconviction claims aimed at him.[40] Santino Ceccotti, Esquire, Mr. Jackson's

---

[35] *See id.*

[36] Mot. for Appointment of Counsel, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Aug. 25, 2020) (D.I. 51).

[37] Order Granting Def.'s Mot. for Appointment of Counsel, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Sept. 9, 2020) (D.I. 52).

[38] PCR Counsel's Mot. to Withdraw, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. July 30, 2021) (D.I. 63).

[39] *Id.* at 21.

[40] Trial Counsel Aff., *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Nov. 4, 2021) (D.I. 68).

counsel on direct appeal, also docketed a responding affidavit.[41] And, the State has answered Mr. Jackson's postconviction claims.[42]

### III. RULE 61'S PROCEDURAL REQUIREMENTS

(18) Postconviction counsel may petition the Court to withdraw as counsel if he can meet the standards set forth in this Court's Criminal Rule 61(e)(7):

> If counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a response to the motion within 30 days of service of the motion upon the movant.[43]

(19) Mr. Eaton has conducted a careful review of Mr. Jackson's case and has determined that Mr. Jackson's claims are so lacking in merit that he cannot ethically pursue them. Mr. Eaton further declares that he is unaware of any other substantial ground for relief.[44] Mr. Eaton provided Mr. Jackson with a copy of his

---

[41] Appellate Counsel Aff., *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Nov. 10, 2020) (D.I. 69).

[42] State's Opp'n, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Dec. 1, 2021) (D.I. 70).

[43] Super. Ct. Crim. R. 61(e)(7).

[44] PCR Counsel's Mot. to Withdraw at 21.

Motion to Withdraw as counsel and advised Mr. Jackson of his option under Rule 61(e)(7) to file a response thereto.[45]

(20) In his response to Mr. Eaton's Motion to Withdraw, Mr. Jackson (i) realleges his ineffective assistance of counsel claims against Mr. Wilkinson, (ii) asks the Court to either appoint new postconviction counsel or compel Mr. Eaton to continue pursuing his claims, and (iii) requests an evidentiary hearing.[46]

(21) To evaluate Mr. Jackson's postconviction claims, and to determine whether his latest counsel's motion to withdraw should be granted, the Court should be satisfied that Mr. Eaton conducted a truly conscientious examination of the record and the law for claims that could arguably support Mr. Jackson's Rule 61 motion. Too, the Court should conduct its own review of the record to determine whether Mr. Jackson's Rule 61 motion is devoid of any, at least, arguable postconviction claims.[47]

(22) Delaware courts must consider Criminal Rule 61's procedural requirements before addressing any substantive issues.[48] The procedural bars of

---

[45] *Id.*

[46] Def.'s Resp. to PCR Counsel's Mot. to Withdraw, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Aug. 25, 2021) (D.I. 66).

[47] *State v. Coston*, 2017 WL 6054944, at *2 (Del. Super. Ct. Dec. 7, 2017).

[48] *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996); *State v. Jones*, 2002 WL 31028584, at *2 (Del. Super. Ct. Sept. 10, 2002).

Rule 61 are "timeliness, repetitiveness, procedural default, and former adjudication."[49] Here, Mr. Jackson's motion was filed less than a year after his judgment of conviction became final.[50] So it's timely. This is Mr. Jackson's first Rule 61 application. So it's not repetitive.

(23) Rule 61(i)(3) states, too, that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows . . . [c]ause for relief from the procedural default and . . . [p]rejudice from violation of the movant's rights."[51] This bar is inapplicable to allegations of ineffective assistance of counsel that, in all but the rarest of circumstances, couldn't have been raised on direct appeal.[52] So Mr. Jackson's ineffective assistance of counsel claims aren't procedurally barred here. And the Court will address them on their merits.

(24) Mr. Jackson levels all sixteen claims of ineffective assistance of counsel at trial counsel only. For the sake of clarity, the Court will first address the merits of claims one through five individually. As claims six through sixteen are either

---

[49] *State v. Stanford*, 2017 WL 2484588, at *2 (Del. Super. Ct. June 7, 2017).

[50] *See* Def.'s PCR Mot. (filed July 27, 2020) (D.I. 48); Supreme Court Mandate, *State v. Gigere F. Jackson*, ID No. 1707014544 (Del. Super. Ct. Oct. 28, 2019) (D.I. 42).

[51] Super. Ct. Crim. R. 61(i)(3).

[52] *State v. Coverdale*, 2018 WL 259775, at *2 (Del. Super. Ct. Jan. 2, 2018).

cumulative or repetitive of the first five claims or general attacks on Mr. Wilkinson's trial strategy and management—rather than the objectives of Mr. Jackson's defense—they will be discussed synchronously.[53]

## IV. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.

(25) A claim of ineffective assistance of counsel is reviewed under the familiar two-part *Strickland* test.[54] A claimant asserting ineffective assistance of counsel must demonstrate that: (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that, but for counsel's errors, the result of his proceedings would have been different.[55]

(26) For the first prong, deficient performance, the burden is on the claimant to show that counsel's conduct fell below an objective standard of reasonableness, "*i.e.*, that no reasonable lawyer would have conducted the defense as his lawyer

---

[53] *Gonzalez v. United States,* 553 U.S. 242, 248-49 (2008) (holding as a matter of practical necessity, the lawyer controls the conduct of trial and client approval for every tactical decision isn't needed); *Taylor v. State*, 28 A.3d 399, 405-406 (Del. 2011) ("[T]he attorney's duty to consult with the defendant regarding 'important decisions'—including questions of overarching defense strategy—does not require counsel to obtain the defendant's consent to "every tactical decision.'").

[54] *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

[55] *Strickland*, 466 U.S. at 688-94; *see also Alston v. State*, 2015 WL 5297709, at *3 (Del. Sept. 4, 2015).

did."[56] There is a strong presumption that counsel's representation was reasonable,[57] and "[i]t is not this Court's function to second-guess reasonable [ ] tactics" engaged by trial counsel.[58] Indeed, an attorney's strategic or tactical choices made after thorough investigation of the relevant law and facts are virtually unchallengeable.[59]

(27) Too, one claiming ineffective assistance "must make specific allegations of how defense counsel's conduct actually prejudiced the proceedings, rather than mere allegations of ineffectiveness."[60] This second prong requires the claimant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[61]

(28) An inmate must prove **both** deficient attorney performance **and** resulting prejudice to succeed in making an ineffective assistance of counsel claim.

---

[56] *Green v. State*, 238 A.3d 160, 174 (Del. 2020) (citing *Burger v. Kemp*, 483 U.S. 776, 791 (1987)).

[57] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[58] *State v. Drummond*, 2002 WL 524283, at *1 (Del. Super. Ct. Apr. 1, 2002).

[59] *Green*, 238 A.3d at 174.

[60] *Alston*, 2015 WL 5297709, at *3 (citing *Wright*, 671 A.2d at 1356); *Monroe v. State*, 2015 WL 1407856, at *3 (Del. Mar. 25, 2015) (citing *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996)); *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

[61] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015) (quoting *Strickland*, 466 U.S. at 694).

Failure in the first instance to prove either will doom his claim and the Court need not address the other.[62]

(29) There are a few situations that the United States Supreme Court has recognized to be so egregious that an ineffectiveness claimant need not prove the prejudice prong of the traditional *Strickland* test. In *United States v. Cronic*, the Court set out three "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."[63] These are: (i) where there was complete denial of counsel at a critical stage of the proceeding;[64] (ii) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing";[65] and, (iii) "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not . . . ."[66]

(30) In his first five claims of ineffective assistance of counsel against Mr. Wilkinson, Mr. Jackson seeks to invoke the *Cronic* standard, claiming that he was denied counsel altogether and counsel entirely failed to subject the prosecution's

---

[62] *Strickland*, 466 U.S. at 697; *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."); *State v. Hamby*, 2005 WL 914462, at *2 (Del. Super. Ct. Mar. 14, 2005).

[63] *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[64] *Id*. at 659.

[65] *Id*.

[66] *Bell v. Cone*, 535 U.S. 685, 696 (Del. 2002).

- 15 -

case to meaningful adversarial testing.[67]  But before the Court will "presume prejudice under *Cronic*, there must be a complete failure of counsel."[68]  As set out below, there was no "complete failure of counsel."  No, Mr. Jackson's contentions exhibit more of either his complete disagreement with or complete misunderstanding of the professional decisions Mr. Wilkinson made, and the professional acts Mr. Wilkinson took—acts taken with, at least, some favorable results—in Mr. Jackson's defense.  Thus, Mr. Jackson's claims will all be subject to the traditional *Strickland* analysis.

### 1.  "Refusal" to allow Mr. Jackson to testify.

(31)  In his first contention of ineffective assistance of trial counsel, Mr. Jackson complains that Mr. Wilkinson refused to let him take the stand at trial to "tell his story."[69]  But the trial record supports no such claim.

(32)  Mr. Jackson has not shown that Mr. Wilkinson's representation here was deficient.  The "ultimate authority to make certain fundamental decisions regarding [his] case"—which include whether to plead guilty, waive trial by jury,

---

[67]  Def.'s PCR Memo. ¶¶ 1-5.

[68]  *Jackson v. Carroll*, 161 F. App'x. 190, 193 (3d Cir. 2005); *State v. Jackson*, 2008 WL 5048424, at *18 n.134 (Del. Super. Ct. Nov. 25, 2008).

[69]  Def.'s PCR Memo. ¶ 1.

testify, or appeal—lays with the criminal defendant.[70] Indeed, a choice like whether to testify or not "implicate[s] [an] inherently personal right[]" the consequence of which falls on the defendant alone and is "too important to be made by anyone else."[71]

(33) That said, a criminal defense attorney no doubt has a duty to advise his client regarding the waiver of such a core right.[72] "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide."[73] Mr. Wilkinson clearly understood his role and explained that it is always his practice to inform clients of their right to take the stand and that such a decision belongs to the client rather than the lawyer who only advises.[74] The trial record demonstrates that is precisely what he did here.

(34) At bottom, when complaining of his lawyer's conduct regarding a

---

[70] *Taylor v. State*, 28 A.3d 399, 406 (Del. 2011) (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

[71] *Cooke v. State*, 977 A.2d 803, 841-42 (Del. 2009).

[72] *United States v. Pennycooke*, 65 F.3d 9, 13 (3d Cir. 1995) ("The duty of providing such advice and of ensuring that any waiver [of the right to testify] is knowing and intelligent rests with defense counsel.").

[73] *United States v. Anderson*, 1 F.4th 1244, 1254 (11th Cir. 2021) (quoting *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) (en banc)).

[74] Trial Counsel Aff. ¶ 2.

waiver of the right to testify, a defendant bears the burden of proving that his counsel was unreasonable and that counsel's deficiency affected defendant's waiver of that right.[75] Thus, Mr. Jackson would—to carry his burden on such a claim—have to demonstrate some deficiency in Mr. Wilkinson's discussion with him about the waiver of his right to testify and then demonstrate that deficiency somehow tainted Mr. Jackson's waiver to such a degree as to overcome the trial (and supplemented postconviction) record and make the Court seriously question the waiver.[76]

(35) During the trial, Mr. Jackson's right to testify and his choice of whether to exercise that right were addressed squarely.[77] To be sure, Mr. Jackson vacillated on whether to testify or not.[78] But after much back-and-forth, Mr. Jackson ultimately told the Court he did not want to testify, and that was his individual and independent decision.[79] There is simply no support for Mr. Jackson's suggestion that he was

---

[75] *See, e.g., State v. Taye*, 2014 WL 785033, at \*3 (Del. Super. Ct. Feb. 26, 2014), *aff'd*, 2014 WL 4657310 (Del. Sept. 18, 2014) (noting the defendant's burden when raising a claim of ineffective assistance regarding waiver of a jury trial).

[76] *Teague*, 953 F.2d at 1534 ("Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf.").

[77] *See* PCR App. at A145-A146.

[78] *Id.* at A146.

[79] *Id.*

> THE COURT: So, Mr. Jackson, you understand that your choice as to testify or not testify is yours, and yours alone, right?

prevented from testifying or that Mr. Wilkinson performed deficiently here in any way.

## 2. Failure to cross-examine the State's witnesses or to present defense witnesses to refute that Mr. Jackson was seen with a firearm.

(36) In Mr. Jackson's second contention of ineffective assistance of trial counsel he says that Mr. Wilkinson did not cross-examine any of the State's witnesses. He also suggests that Mr. Wilkinson was ineffective for failing to call any defense witnesses who could have testified that they never observed Mr. Jackson "with a gun in or around the house."[80] Such testimony, says Mr. Jackson, could have changed the outcome "because it wasn't a drug case anymore."[81] To prevail on this

---

MR. JACKSON: Yes.

THE COURT: Mr. Wilkinson can give you his best advice, but at the end you can set that advice aside, and it is your own individual decision. Do you understand that?

MR. JACKSON: Yes.

> \* \* \*

THE COURT: Mr. Jackson, are you telling the Court that you have changed your mind and you do not wish to take the stand?

MR. JACKSON: Yes.

THE COURT: That's your own individual decision?

MR. JACKSON: Yes.

[80] Def.'s PCR Memo. ¶ 2.

[81] *Id.*

claim, Mr. Jackson must prove, again, (i) deficient performance, and (ii) resulting prejudice.[82] And again, he doesn't.

(37) A criminal defense attorney is given wide latitude when making strategic trial decisions; this extends to the conduct of cross-examination.[83] The questions to be asked and how a given cross-examination is conducted are tactical decisions.[84] "And when challenging those decisions, the movant has the burden of supplying precisely what information would have been obtained had counsel conducted the cross as the complaining inmate desired and just how this information would have changed the result of his trial."[85]

(38) The testimony presented at this bench trial was brief and comprised five witnesses called by the State. Mr. Wilkinson cross-examined two of the State's witnesses—and both times, he consulted Mr. Jackson before concluding his

---

[82] *Strickland*, 466 U.S. at 688-94.

[83] *State v. Powell*, 2016 WL 3023740, at *25 (Del. Super. Ct. May 24, 2016).

[84] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) ("Whether to call a witness, and how to cross-examine those who are called are tactical decisions."); *see also* Jean K. Gilles Phillips and Joshua Allen, *Who Decides: The Allocation of Powers Between the Lawyer and the Client in a Criminal Case?,* 71 J. KAN. BAR ASS'N 28, 29 (2002) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 n.1 (1977)) ("[T]he United States Supreme Court [has] held that the attorney possesses the right to decide certain strategic and tactical decisions, including what witnesses to call, whether and how to conduct cross-examination, what trial motions should be made, and what evidence should be introduced.").

[85] *State v. Caulk*, 2021 WL 2662250, at *9 (Del. Super. Ct. June 29, 2021), *aff'd*, 2022 WL 320575 (Del. Feb. 2, 2022) (citing *Outten*, 720 A.2d at 557 (quoting *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995))).

questioning.[86]  Nevertheless, to the extent Mr. Jackson now disagrees with the manner cross-examination was conducted, Mr. Wilkinson has explained that he avoided asking certain questions either because of their lack of strategic value or because such a line of questioning would have prejudiced Mr. Jackson.[87]

(39)  No doubt, Mr. Wilkinson subjected the prosecution's case to meaningful adversarial testing *and* did so with Mr. Jackson's objectives in mind. For instance, Mr. Jackson's fifth enumeration of ineffective assistance of counsel says Mr. Wilkinson failed to inquire whether either of the guns fit into the recovered holster.[88]  Not so. Before concluding his cross-examination of one officer, Mr. Wilkinson asked the Court "for a couple of moments"—ostensibly to confer with Mr. Jackson. He resumed cross-examination by inquiring whether "there was any attempt to see if either one of those guns fit in that holster."[89]  This is just one example of the many where a complaint lodged by Mr. Jackson is undermined by the factual record.  A thorough examination of the record reveals that

---

[86]  *See* PCR App. at A130 ("Can I have a couple of moments?"); *id.* at A145 ("Can I just have a couple moments?").

[87]  Trial Counsel Aff. ¶¶ 4-6.

[88]  Def.'s PCR Memo. ¶ 5.

[89]  PCR App. at A130.

Mr. Wilkinson's conduct in challenging the State's witnesses was informed and reasonable.

(40)   Neither was counsel ineffective for not calling some unidentified defense witness that Mr. Jackson now suggests *might* have been helpful. Recall, Mr. Jackson's DNA had been found on at least one of the guns.  So this ideal witness would have to know enough about 434 S. Van Buren's inhabitants and contents to be helpful, but still clearly confirm Mr. Jackson purportedly had nothing to do with the gun-laden cooler.  Given the facts of this case, that's a tall order. Mr. Wilkinson had decided to take the safer route of stressing the weaknesses of the State's evidence in his closing arguments.[90]  Namely, that two guns were discovered well-concealed in a messy room that Mr. Jackson had only been seen walking out of and that there had been no eyewitness testimony placing the secreted guns in Mr. Jackson's hands.[91]  He used the State's own witnesses to support his theory that any damning DNA findings were the result of transfer, not handling.

(41)   Mr. Wilkinson also was careful to avoid evidence of the precipitating drug investigation.  While the fact that the police obtained a warrant to search for drugs but never found any has always been a fixation for Mr. Jackson, as a legal

---

[90]   *Id.* at A148.

[91]   *Id.*

matter it is of no moment. And Mr. Wilkinson's informed decision—that straying into the minefield of the drug investigation that identified Mr. Jackson as the dealer in that home was of far more harm than any possible good—was sound. Indeed, by keeping the drug evidence out, Mr. Wilkinson focused the Court on the arguably tenuous nexus between Mr. Jackson and the seized firearms.

(42)   Mr. Jackson has failed to show that Mr. Wilkinson's cross-examination methods or decision not to call certain unidentified witnesses fell below an objective standard of reasonableness. And with this failure alone, the Court need not address *Strickland*'s prejudice inquiry.[92]

### 3. Failure to prosecute a motion to suppress challenging the admissibility of the firearms seized on either *Miranda* grounds or a claim that the warrant executed did not authorize the seizure of the guns found.

(43)   Mr. Jackson's third, fourth, and multiple of his later claims of ineffective assistance of trial counsel focus on separate but related issues. He faults Mr. Wilkinson for failing to pursue a suppression motion attacking a potential *Miranda* violation. And, he says, because the firearms were discovered after he invoked his right to remain silent, he faults Mr. Wilkinson for not challenging their admission as evidence against him on that ground.[93] Lastly, he says the police should

---

[92]   *Hamby*, 2005 WL 914462, at *2 ("[T]he failure to prove either the [deficient performance] or the prejudice prong will render the [Strickland] claim unsuccessful. In such instances, the court need not address the other prong.").

[93]   Def.'s PCR Memo. ¶¶ 3, 4, 10, 16.

have never seized the guns found because the search warrant executed was issued to search for drugs.

(44)   First, Mr. Jackson was not prejudiced by counsel's failure to pursue a *Miranda*-based suppression motion because the same objective was achieved by other means. Trial counsel's cross-examination at the preliminary hearing elicited testimony that, upon post-*Miranda* police probing, Mr. Jackson claimed ownership of the firearms found at 434 S. Van Buren. Presumably, then, a suppression motion would operate to prevent the use of that admission at trial. But both trial counsel and the State confirm they had a pretrial agreement that the State would not introduce what Mr. Jackson told the officers about the guns.[94] So, suppression motion or not, the same result was still achieved at trial—Mr. Jackson's statements acknowledging ownership of the guns were never admitted. Mr. Jackson cannot identify what more a suppression motion aimed at his statements at the scene would have gained. Accordingly, this aspect of the claim fails.

(45)   Mr. Jackson next insists that had a *Miranda*-based suppression motion been filed, it would have been successful on the merits and the firearms would have

---

[94]   Trial Counsel Aff. ¶ 3; *see also* State's Resp. at 1-2 (confirming the State and trial counsel had an agreement that the State would not "mention the admission by Jackson that the guns were his at trial").

been suppressed.[95] That is, Mr. Jackson suggests that the police would not have located the guns had he not spoken up.

(46) Further following his theme that some type of suppression motion was in order, Mr. Jackson contends also that the officers exceeded the scope of the "four corners" of the search warrant they executed because it authorized the seizure of drugs rather than firearms.[96] This was addressed by this Court at trial and again by the Delaware Supreme Court on direct appeal. In short, Mr. Wilkinson wasn't unreasonable for failing to try to exclude the guns on these grounds nor can Mr. Jackson show any resultant prejudice.

(47) Addressing the mild discord between Mr. Jackson and Mr. Wilkinson during trial, the Court engaged Mr. Jackson directly, noting that he seemed "concerned that Mr. Wilkinson is not raising some issue that [he wished] to have raised."[97] After reviewing the warrant and hearing Mr. Jackson's concerns, the Court explained the applicable law.

> THE COURT: So your concern is they had a search warrant to look for cocaine in the house, but they found guns, correct?
>
> MR. JACKSON: Yes. The provisions of the search warrant said that I had a large amount of crack in the house. They didn't find no crack whatsoever in the house.

---

[95] Def.'s PCR Memo. ¶¶ 6, 7, 12, 13, 14, 16.

[96] *Id.*

[97] PCR App. at A134.

THE COURT: Generally, once a search warrant is issued, the police then have the authority to search any place within the confines of the warrant, here being the residence and your person, that may, in fact, have drug evidence.

The fact that they may not find it, but find other evidence, or other contraband, or such things, generally that is permitted by law, Mr. Jackson. So I'm not quite sure what your complaint at this point would be.

\* \* \*

THE COURT: So, Mr. Jackson, it appears that there was a search warrant initially, because the police had developed probable cause to believe there may be drug evidence in that home. . . . They ended up finding guns while they were searching for drugs, which is not – there is nothing impermissible about that, as long as they were searching places for which they had a warrant and places that could actually hold that type of evidence.[98]

In affirming Mr. Jackson's conviction on direct appeal—where he raised this same issue—the Delaware Supreme Court also rejected his argument observing: "The Superior Court correctly summarized the law and its application in this case."[99]

(48) Each of Mr. Jackson's suppression claims—no matter what the flavor—fails because the police were acting within the lawful scope of the warrant that authorized their search of 434 S. Van Buren Street when they seized the guns[100]

---

[98] *Id.* at A134-A135.

[99] *Jackson*, 2019 WL 5067096, at \*2.

[100] *Id.*

and those guns would have been found in the normal course of that search no matter what Mr. Jackson said or withheld.

(49)  To be sure—even where there is actual evidence of police misdoing—the "inevitable discovery" doctrine allows introduction of evidence seized if the prosecution can prove such evidence "would have been discovered through legitimate means in the absence of official misconduct."[101]  A "legitimate" search includes "the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."[102]  Here, the search of Mr. Jackson's home was conducted pursuant to a *lawful* search warrant.[103]  Because a cooler was a place that reasonably could conceal drugs, the police officers would have searched it and the guns inevitably would have been found there.  So, the guns were lawfully discovered.  No suppression motion attacking any aspect of the guns' discovery could have affected the outcome of Mr. Jackson's trial—the guns were legally seized and admissible.

---

[101]  *Cook v. State*, 374 A.2d 264, 267-68 (Del. 1977) (quoting Harold S. Novikoff, *The Inevitable Discovery Exception to the Constitutional Exclusionary Rules*, 74 COLUM. L. REV. 88, 90 (1974)).

[102]  *United States v. Ross*, 456 U.S. 798, 820-21 (1982).

[103]  *See* PCR App. at A88-A96.

Because Mr. Jackson demonstrates no resultant prejudice, his third and fourth claims of ineffective assistance of trial counsel fail.[104]

### 4. Mr. Jackson's remaining claims are cumulative or repetitive attacks on Mr. Wilkinson's trial strategy and trial management.

(50) To the extent the substance of his remaining claims has not already been addressed, Mr. Jackson's ineffective assistance of counsel counts six through sixteen are by-and-large complaints on the tactical decisions pursued at trial. At bottom, each claim is a recast criticism of trial counsel's cross-examination of witnesses (or lack thereof) and his failure to explore the absence of drugs found in the home. As to each and collectively, Mr. Jackson has not demonstrated there is a reasonable probability that a different approach would have affected the outcome of his case. So, again, he cannot satisfy the *Strickland* standard.

(51) "The lawyer's province is trial management, but some decisions are reserved for the client."[105] The decisions reserved for the client embrace the objectives of the defense, such as whether to plead guilty or assert claims of innocence, waive the right to a jury trial, or take the stand and testify.[106] Conversely,

---

[104] *Ploof*, 75 A.3d at 821 ("To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"); *Green v. State*, 238 A.3d 160, 174-75 (Del. 2020) ("We may dispose of an ineffective-assistance claim based on the absence of sufficient prejudice without addressing the performance prong if, in fact prejudice is lacking.").

[105] *McCoy v. Louisiana*, 138 S. Ct. 1500, 1503 (2018).

[106] *Id.*

the decisions affecting the conduct of the trial, such as "the objections to make, the witnesses to call, and the arguments to advance" are trial management decisions left to the lawyer.[107]

(52)  Here, trial counsel neither overstepped nor blurred the boundaries of his trial management domain.  As to the decisions reserved for the defendant, the record is clear that Mr. Jackson's plea offer rejection,[108] jury trial waiver,[109] and decision not to testify were of his own volition.[110]  With respect to cross-examination—a function well-within trial counsel's province—the record evidences trial counsel's efforts to include Mr. Jackson's input for each witness questioned.[111] And once the State rested, Mr. Wilkinson asked for the Court's indulgence several times—including a request to recess—to confer with Mr. Jackson before delivering

---

[107] *Id.* at 1509 (quoting *Gonzalez v. United States,* 553 U.S. 242, 249 (2008)); *see also Taylor v. State*, 28 A.3d 399, 405-406 (Del. 2011).  Mr. Jackson was reminded of this delicate dichotomy between counsel and client time and again during his trial. *E.g.*, PCR App. at A139 ("Mr. Jackson, as I've indicated to you before, you have counsel.  And it is your counsel's job to do the day-to-day job of presenting your case."); *see also id.* at A130 ("Mr. Jackson, I'm going to stop you right now.  One, you are represented by counsel.  That means if you have objections or things like that, they have to come through him.").

[108] *Id.* at A43-A49.

[109] *Id.* at A125-A126.

[110] *Id.* at A145-A146.

[111] *Id.* at A130, A145.

closing arguments.[112]  Thus, Mr. Jackson has neither shown that Mr. Wilkinson's trial management and strategies fell below an objective standard of reasonableness, nor has he shown how an alternate approach would have changed the outcome.

(53)  To reiterate, trial counsel didn't pursue lines of questioning suggested by Mr. Jackson because he did not believe there was any strategic value to them.[113] Nor did counsel elicit testimony about the drug investigation and lack of drugs found in the home because those were both irrelevant to Mr. Jackson's guilt on the gun charges and could have proved far more prejudicial than beneficial to him.[114]  And finally, counsel did not ultimately prosecute any challenge to the admissibility of the guns because their inevitable discovery rendered such a challenge futile.[115]  These were all sound tactical choices made by informed counsel.  And with this failure alone, the Court need not go further in its *Strickland* examination.[116]

---

[112]  *Id.* at A145, A146.

[113]  Trial Counsel Aff. ¶¶ 4-6.

[114]  *Id.* ¶ 5.

[115]  *Id.*

[116]  *Ploof*, 75 A.3d at 821 ("If an attorney makes a strategic choice after thorough investigation of law and facts relevant to plausible options, that decision is virtually unchallengeable.") (cleaned up); *State v. Davenport*, 2018 WL 3584437, at *2 n.13 (Del. Super. Ct. July 24, 2018) ("The Court will defer to reasonable strategic decisions of Trial Counsel."), *aff'd*, 2019 WL 2513771 (Del. June 17, 2019).

## V. CONCLUSION

Having reviewed the record carefully, the Court has concluded that Mr. Jackson's claims are without merit, and no other substantial grounds for relief exist. Mr. Jackson hasn't shouldered his heavy *Strickland* burden of demonstrating that his attorney's representation fell below an objective standard of reasonableness or that, but for that attorney's alleged errors, the outcome of his case would have been any different. Accordingly, both Mr. Jackson's Motion for Postconviction Relief and his request for an evidentiary hearing are **DENIED**[117] and Mr. Eaton's Motion to Withdraw is **GRANTED**.

   **IT IS SO ORDERED.**

                **Paul R. Wallace, Judge**

Original to Prothonotary

cc: John S. Taylor, Esquire
   Edward F. Eaton, Esquire
   Ralph D. Wilkinson, Esquire
   Santino Ceccotti, Esquire
   Mr. Gigere F. Jackson, *pro se*

---

[117] Where it is apparent on the face of a postconviction motion, the responses thereto, the record of prior proceedings, and any added materials that a movant is not entitled to relief, there is no need for an evidentiary hearing. *Johnson v. State*, 2015 WL 8528889, at *4 (Del. Dec. 10, 2015) (quoting *Hawkins v. State*, 2003 WL 22957025, at *1 (Del. Dec. 10, 2003)).